

FILED

FEB 24 2023 *MMA*

February 24, 2023
JUDGE MATTHEW F. KENNELLY
UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

UNITED STATES OF AMERICA

v.

ADRIAN C. PETERS

No. 21 CR 50035

Judge Matthew F. Kennelly

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant ADRIAN C. PETERS, and his attorney, MICHAEL I. LEONARD, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The indictment in this case charges defendant with conspiracy to fail to appear, in violation of Title 18, United States Code, Section 371 (Count One) and failure to appear, in violation of Title 18, United States Code, Sections 3146(a)(1) and (b)(1)(A)(i).

3. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the indictment: Count One, which charges defendant with conspiracy to fail to appear, in violation of Title 18, United States Code, Section 371.

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

Between on or about July 6, 2015, and on or about June 30, 2016, at South Beloit, within the Northern District of Illinois, and elsewhere, defendant, James Burke, Ross Greenberg, and Individual A did conspire with each other, and with others known and unknown, to commit an offense against the United States, namely, failure by defendant to appear for a status hearing on June 30, 2016, as required by the conditions of defendant's release order, in violation of Title 18, United States Code, Section 371.

Specifically, on or about June 30, 2015, an indictment was filed against defendant in the United States District Court for the Northern District of Illinois in case number 15 CR 50026. The indictment alleged violations of Title 18, United States Code, Section 2251(a). On or about July 2, 2015, a United States Magistrate Judge entered an order releasing defendant from custody. The court's order required

2

that, as a condition of defendant's release, defendant must appear as required for all court proceedings related to the case. The order further required that, as a condition of defendant's release, defendant be placed on home incarceration with location monitoring, participate in mental health treatment and post a $15,000 secured bond.

During the conspiracy, defendant, Individual A and others discussed ways that defendant could flee to Canada to avoid prosecution of the charges against him in the Northern District of Illinois in case number 15 CR 50026. During the conspiracy, defendant asked Individual A to research immigration policies in Canada from a computer at the Rockton library so Individual A's search history could not be tracked by law enforcement. A member of the conspiracy also provided Individual A with $500 in United States currency to purchase gift cards so items could be purchased online without a credit card for defendant's flight to Canada.

Between February and June 2016, a member of the conspiracy asked Individual A to find someone to drive defendant to Canada for $600. Individual A asked James Burke, who Individual A knew from Rock Valley College; Burke agreed to drive defendant to Canada for $600. Defendant and others decided to ask Ross Greenberg, defendant's martial arts instructor, to pick up defendant in Canada. Greenberg agreed to do so for $1,000.

In or about May or June 2016, defendant and others created three fake South Carolina identification cards in the name of Christopher Allen Smith and one fake Alabama birth certificate in the name of Christopher Allen Smith for defendant to

3

use in Canada. Prior to creating the three fake identification cards and one fake birth certificate, defendant asked Individual A to do research using the Wi-Fi at a local McDonald's to research examples of driver's licenses from different states. Defendant and another member of the conspiracy instructed Individual A to find examples of easy, non-border states as defendant and the other individual feared that Canadian border patrol may be more familiar with border states, such as Wisconsin and Michigan. Defendant and the other individual created the fake Alabama birth certificate, which the other individual signed as the mother, defendant signed as the father, and Individual A signed as the registrar.

On or about May 12, 2016, the assigned United States Magistrate Judge held a status hearing where defendant appeared. The assigned United States Magistrate Judge continued the status hearing to June 30, 2016, and ordered defendant to appear.

On or about June 28, 2016, a member of the conspiracy drove defendant to Rock Cut State Park where they met with Burke, who subsequently drove defendant to the border of the United States and Canada. While in route to Canada, defendant hid his face each time Burke's car went through a toll to avoid cameras. Around the same time, Ross Greenberg drove separately to the border and crossed into Canada on June 29, 2016. Later on June 29, 2016, Greenberg picked up defendant in Canada and drove defendant to a motel in Canada.

On June 30, 2016, defendant failed to appear in Rockford, Illinois for his status hearing in case number 15 CR 50026 because defendant was voluntarily in a motel in Canada. Defendant acknowledges that he knew he was ordered to be present at the hearing on June 30, 2016, in the Rockford federal courthouse.

## Maximum Statutory Penalties

7. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

    a. A maximum sentence of 5 years' imprisonment. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

    b. Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

## Sentencing Guidelines Calculations

8. Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate

5

deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

   a. **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2021 Guidelines Manual.

   b. **Offense Level Calculations.**

      i. The base offense level is 6, pursuant to Guideline §§ 2J1.6(a)(2) and 2X1.1(a).

      ii. The offense level is increased by 9 levels, to 15, pursuant to Guideline § 2J1.2(b)(2)(A), because the underlying offense is punishable by imprisonment for a term of fifteen years or more.

      iii. The government contends, and defendant reserves the right to contest, that the offense level is increased by 3 levels, to 18, pursuant to

6

Guideline § 3B.1(b), because defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive.

    iv.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

    c.    **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

    i.    On or about December 12, 2019, defendant was convicted of three counts of sexual exploitation of children in the United States District Court for the Northern District of Illinois, case number 15 CR 50026, and sentenced to 26 years' imprisonment. Pursuant to U.S.S.G. § 2J1.6, comment. (n. 5), this conviction results in 0 criminal history points.

7

d. **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the government contends, and defendant reserves the right to contest, that the anticipated offense level is 15 which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 18 to 24 months' imprisonment, in addition to any supervised release and fine the Court may impose.

e. Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The

8

parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

11. Each party is free to recommend whatever sentence it deems appropriate, including whether defendant's sentence should run concurrent or consecutive to defendant's sentence in 15 CR 50026.

12. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

14. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining count of the indictment as to defendant.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

15. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 21 CR 50035.

16. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

17. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

        i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge

sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

  ii.  If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

  iii.  If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

  iv.  If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

  v.  At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant.

11

Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

      vi.    At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

      vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

    b.    **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

18.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

12

## **Presentence Investigation Report/Post-Sentence Supervision**

19. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

20. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

21. For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual

income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

22. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

23. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

### Conclusion

24. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

25. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its

option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

26. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

27. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

[remainder of page intentionally left blank]

28. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 2/24/2023

_____
JOHN R. LAUSCH, JR.
United States Attorney

_____
SCOTT R. PACCAGNINI
Assistant U.S. Attorney

_____
ADRIAN C. PETERS
Defendant

_____
MICHAEL I. LEONARD
Attorney for Defendant

16